10 Civ. 9534 (RPP)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Jose Morales, et al.,

Plaintiffs,

- against -

City of New York, et al.,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(C)**

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Martin Bowe*
*Tel: (212) 788-0878*
*Matter No. 2010-032039*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........ iii

PRELIMINARY STATEMENT ........ 1

THE ALLEGATIONS IN THE COMPLAINT ........ 2

STANDARD OF REVIEW ........ 5

ARGUMENT ........ 7

POINT I

PLAITNIFFS FAILED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES ........ 7

POINT II

THE COMPLAINT FAILS TO STATE A COGNIZABLE FEDERAL CLAIM ........ 11

A. PLAINTIFF DOES NOT HAVE STANDING TO BRING CLAIMS ON BEHALF OF OTHER INDIVIDUALS ........ 11

B. PLAINTIFF DOES NOT ALLEGE AN INJURY IN FACT FOR A NUMBER OF HIS CLAIMS. ........ 12

C. THE COMPLAINT FAILS TO ALLEGE CLAIMS UNDER THE ADA OR REHABILITATION ACT ........ 13

D. THE COMPLAINT FAILS TO STATE A CLAIM UNDER 42 U.S.C. § 1983 ........ 14

1. Deliberate Indifference to medical Need ........ 14

2. Conditions of Confinement ........ 15

POINT III

THE COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO ESTABLISH ANY PERSONAL INVOLVEMENT OF ANY NAMED DEFENDANT ........ 16

**Page**

POINT IV

THE COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO ESTABLISH MUNICIPAL LIABILITY....................20

POINT V

THE INDIVIDUALLY NAMED DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY..............................................21

CONCLUSION........................................................................................................................ 22

# TABLE OF AUTHORITIES

**Cases** **Pages**

Adams v. Ellis,
09 CV 1329 (PKC), 2012 U.S. Dist. LEXIS 29621,
(S.D.N.Y., Mar. 2, 2012) ..... 17

Amador v. Andrews,
655 F.3d 89, 102 (2d Cir. 2011)..... 8

Ashcroft v. Iqbal,
556 U.S. 662 (2009)..... 6, 10, 16, 17, 18

Atlantic Corp. v. Twombly,
550 U.S. 544 (2007)..... 5

Bellamy v. Mount Vernon Hosp.,
07 CV 1801 (SAS), 2009 U.S. Dist. LEXIS 54141,
(S.D.N.Y. June 26, 2009)..... 16, 17, 18

Bellamy v. Mount Vernon Hosp.,
387 Fed. Appx. 55, 2010 U.S. App. LEXIS 14981, (2d Cir., 2010)..... 16

Berry v. Millbrook,
815 F. Supp. 2d 711 (S.D.N.Y. 2011)..... 20

Brock v. Wright,
315 F.3d 158 (2d Cir. 2003)..... 14

Bryant v. County of Monroe,
09 CV 6415 (CJS), 2010 U.S. Dist. LEXIS 126426,
(N.D.N.Y., Nov. 22, 2010) ..... 18

Byng v. Wright,
09 CV 9924 (PKC) (JCF), 2012 U.S. Dist. LEXIS 39618,
(S.D.N.Y., Mar. 19, 2012,) ..... 17

Caiozzo v. Koreman,
581 F.3d 63 (2d Cir. 2009)..... 14

Chambers v. Time Warner, Inc.,
282 F.3d 147 (2d Cir. 2002)..... 6

Chance v. Armstrong,
143 F.3d 698 (2d Cir. 1998)..... 14

**Cases** **Pages**

Chisholm v. N.Y.C. Dep't of Corr.,
8 CV 8795, 2009 U.S. Dist. LEXIS 59446, (S.D.N.Y. July 13, 2009)...................................... 7

Cleveland v. Caplaw Enters.,
448 F.3d 518, 521 (2d Cir. 2006)......................................................................................... 5

Colon v. Coughlin, 58 F. 3d 865, 873 (2d Cir. 1995) ............................................... 16, 17, 18, 19

Crique v. Magill,
12 CV 3345 (PAC) (GWG), 2013 U.S. Dist. LEXIS 62377
(S.D.N.Y. May 1, 2013)....................................................................................................... 5

De la Rosa v. New York City, 33 Precinct,
No. 07 CV 7577 (PKC) (KNF), 2010 U.S. Dist. LEXIS 43197,
2010 WL 1737108 (S.D.N.Y. Apr. 27, 2010)............................................................................ 17

DeCarlo v. Fry,
141 F.3d 56 (2d Cir. 1998)..................................................................................................... 21

Delgado v. Bezio,
09 CV 6899 (LTS), 2011 U.S. Dist. LEXIS 51917,
(S.D.N.Y., May 9, 2011)......................................................................................................... 17

DiFolco v. MSNBC Cable LLC,
622 F.3d 104, (2d Cir. 2010).................................................................................................. 6

Edwards v. Horn,
10 CV 6194 (RJS) (JLC), 2012 U.S. Dist. LEXIS 30968,
(S.D.N.Y. Mar. 8, 2012) ......................................................................................................... 13

Elbert v. New York State Dep't of Corr. Servs.,
751 F. Supp. 2d 590 (S.D.N.Y. 2010)..................................................................................... 13

Elk Grove Unified Sch. Dist. v. Newdow,
542 U.S. 1 (2004).................................................................................................................. 11

Estelle v. Gamble,
429 U.S. 97 (1976)................................................................................................................ 15

Fludd v. Fischer,
10 CV 6603 (CJS), 2012 U.S. Dist. LEXIS 122924,
(W.D.N.Y., Aug, 28, 2012).................................................................................................... 18

Flynn v. Lee,
11 CV 5311 (LAP), 2012 U.S. Dist. LEXIS 108626,
(S.D.N.Y., Aug. 1, 2012) ....................................................................................................... 17

**Cases** **Pages**

Gamble v. City of New York ex rel. NYC Dept. of Correction,
04 CV 10203 (GL), 2009 U.S. Dist. LEXIS 88562,
(S.D.N.Y. Sept. 25, 2009) ..... 15

Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn,
280 F.3d 98 (2d Cir. 2001) ..... 13

Gilliam v. Hamula,
06 CV 6351 (CJS)(MWP), 2011 U.S. Dist. LEXIS 142431,
(W.D.N.Y., Dec. 12, 2011) ..... 18

Greenwaldt v. Coughlin,
93 CV 6551, 1995 U.S. Dist. LEXIS 5144, 1995 WL 232736,
(S.D.N.Y. April 19, 1995) ..... 19

Harlow v. Fitzgerald,
457 U.S. 800 ..... 21

Hathaway v. Coughlin,
37 F.3d 63 (2d Cir. 1994) ..... 14

Hemphill v. New York,
380 F.3d 680, 686-91 (2d Cir. 2004) ..... 8

Hernandez v. Keane,
341 F.3d 137 (2d Cir. 2003) ..... 14

Hill v. Curcione,
657 F.3d 116 (2d Cir. 2011) ..... 6

In re State Police Litig.,
88 F.3d 111 (2d Cir. 1996) ..... 21

James v. Hernandez,
8 CV 4293, 2009 U.S. Dist. LEXIS 58735, (S.D.N.Y. July 9, 2009) ..... 7

Jessamy v. City of New Rochelle,
292 F. Supp. 2d 498 (S.D.N.Y. 2003) ..... 20

Johnson v. Agros,
10 CV 8312, 2012 U.S. Dist. LEXIS 117248 (S.D.N.Y. Aug. 20, 2012) ..... 8

Johnson v. Wright,
234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) ..... 18

**Cases** **Pages**

Jones v. Bock,
549 U.S. 199, 218 (2007) ........ 7

Joseph v. Fischer, 08 Civ. 2824, 2009 U.S. Dist. LEXIS 96952, 2009 WL 3321011,
(S.D.N.Y. Oct. 8, 2009) ........ 17

Lewis v. Casey,
518 U.S. 343 (1996) ........ 11

Lewis v. Cunningham,
05 CV 9243 (GBD)(RLE), 2011 U.S. Dist. LEXIS 40181,
(S.D.N.Y. March 14, 2011) ........ 19

Lozado v. Warden Downstate Correctional Facility,
10 CV 8425 (RWS), 2012 U.S. Dist. LEXIS 88515,
(S.D.N.Y., June 22, 2012) ........ 17

Lujan v. Defenders of Wildlife,
504 U.S. 555, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992) ........ 11

Maldonado v. Kinlock, et al.,
09 CV 8435, 2012 U.S. Dist. LEXIS 118200, (S.D.N.Y. Aug. 21, 2012) ........ 17

Mamon v. N.Y.C. Dep't of Corr.,
10 CV 8055, 2012 U.S. Dist. LEXIS 16519, (S.D.N.Y. Jan. 26, 2012) ........ 7, 10

Martin v. City of N.Y.,
11 CV 600 2012 U.S. Dist. LEXIS 56632, (S.D.N.Y. Apr. 19, 2012) ........ 8

McKethan v. N.Y. State Dep't of Corr. Servs.,
10 CV 3826 (NRB), 2011 U.S. Dist. LEXIS 105771,
(S.D.N.Y., Sept. 16, 2011) ........ 17

Jones v. Meckley,
07 CV 10414 (RWS) 2010 U.S. Dist. LEXIS 2897 (S.D.N.Y. Jan. 12, 2010) ........ 7, 10

Mendoza v. Goord,
00 CV 0146, 2002 U.S. Dist. LEXIS 22573
(S.D.N.Y. Nov. 21, 2002) ........ 8

Monell v. Dep't of Soc. Servs.,
436 U.S. 658, (1978) ........ 20

Nance v. Kelly,
912 F.2d 605, 607 (2d Cir. 1990) ........ 14

**Cases** **Pages**

Perez v. County of Westchester,
83 F. Supp. 2d 435 (S.D.N.Y. 2000),
*aff'd*, 242 F.3d 367 (2d Cir. 2000) .......... 20

Phelan v. Thomas,
439 Fed. Appx. 48 (2d Cir. 2011) .......... 13

Porter v. Nussle,
534 U.S. 516, 523 (2002) .......... 7

Rhodes v. Chapman,
452 U.S. 337, 347 (1981) .......... 15

Robinson v. N.Y.C. Dep't of Corr.,
06 CV 945, 2007 U.S. Dist. LEXIS 96851,
(S.D.N.Y. Mar. 7, 2007) .......... 8

Rodriguez v. City of New York,
197 F.3d 611, 618 (2d Cir. 1999) .......... 12

Salahuddin v. Goord,
467 F.3d 263 (2d Cir. N.Y. 2006) .......... 14, 21

Salvatierra v. Connolly,
9 CV 3722, 2010 U.S. Dist. LEXIS 137731,
(S.D.N.Y. Sept. 1, 2010) .......... 7

Sash v. U.S.,
08 CV 8332 (AJP), 674 F. Supp. 2d 531; 2009 U.S. Dist. LEXIS 116580
(S.D.N.Y., Dec. 15, 2009) .......... 17, 18

Saucier v. Katz,
533 U.S. 194 (2001) .......... 21

Singleton v. Wulff,
428 U.S. 106 (1976) .......... 12

Smith v. Carpenter,
316 F.3d 178 (2d Cir. 2003) .......... 14

Spavone v. Fischer,
10 CV 9427 (RJH)(THK), 2012 U.S. Dist. LEXIS 13550,
(S.D.N.Y. January 31, 2012) .......... 19

Triestman v. Fed. Bureau of Prisons,
470 F.3d 471 (2d Cir. 2006) .......... 6

**Cases** **Pages**

United States v. Hayes,
515 U.S. 737 (1995) ........ 11, 12

Wilson v. Seiter,
501 U.S. 294 (1991) ........ 15, 16

Woodford v. Ngo,
548 U.S. 81 (2006) ........ 8

Word v. Croce,
230 F. Supp. 2d 504 (S.D.N.Y. 2002) ........ 19

Wright v. Smith,
21 F.3d 496 (2d Cir. 1994) ........ 16

Young v. State of N.Y. Office of Mental Retardation and Developmental Disabilities,
649 F.Supp.2d 282 (S.D.N.Y. 2009) ........ 18

**Statutes**

42 U.S.C. § 1983 ........ 6, 13, 16, 17, 20

42 U.S.C. § 1997(e)(a) ........ 7

Fed. R. Civ. P. 12(b)(6) ........ 5, 18

Fed. R. Civ. P. 12(c) ........ 5, 7

Fed. R. Evid. 201(b) ........ 8

Fed. R. Evid. 201(d) ........ 8

**PRELIMINARY STATEMENT**

Plaintiffs, all *pro se*, (their status as purported plaintiffs discussed separately below), allege that, while in the custody of the New York City Department of Correction ("DOC"), they were denied their rights under the Americans with Disabilities Act ("ADA"). Plaintiffs commenced this action by filing the complaint on June 9, 2010 ("Complaint")[1]. Ex. A Dkt. No. 1. Copies of docket sheet entries numbered "1" and "29" (together comprise Morales allegations), "87" (Mason allegations) and "64" (Edwards allegations), are annexed respectively as exhibits "A," "B" and "C" to the Declaration of Martin Bowe dated May 8, 2013 ("Bowe Decl."). Plaintiffs do not allege any specific deprivation suffered nor any specific injury suffered. Id. at 3. Rather, plaintiff Morales makes broad institutional allegations which closely track the claims that were made by various plaintiffs in Bennett (and published in a Bennett Stipulation, 07-CV-2823 (RPP) which was available to all inmates at Northern Infirmary Command ("NIC"), in the law library during the relevant time period herein). Id. Plaintiff Morales makes no specific allegation of conduct by any named defendant. Id. *passim*.

Plaintiff Mason filed a request to join the action on December 10, 2010, Ex. B Dkt. No. 87, alleging that his needed hip replacement was delayed for nine months, and that while at NIC inmates there were denied "trapeze beds…showers or commodes with handrails…[and denied] trained mobility aids to assist me" which "further exacerbation of my injuries." Id. at 2. Plaintiff Mason makes no allegations of wrongdoing by any specific DOC personnel, but rather alleges that he was under medical supervision while at NIC and also was cared for at Bellevue Hospital during the relevant period. Id.

---

[1] All other purported plaintiffs adopted plaintiff Jose Morales's Complaint as their own—as the Court invited them to, see Dkt. No. 1 at p. 17—and never submitted any additional factual allegations. On November 1, 2010 plaintiff filed a request to amend his complaint, Dkt. No. 29, which was not ruled on by the Court. Notwithstanding, defendants analyze both docket entries together as the Complaint.

Plaintiff Edwards filed an IFP application and a request to be "added as a class member," Dkt. No. 31, and on October 21, 2011; and then filed a statement of claim alleging many slips and falls with many resulting vague and nondescript injuries over the course of three months. Ex. C Dkt. No. 64. Plaintiff Edwards does not make claims against any specific DOC personnel. Id.

As discussed below, all remaining purported plaintiffs in this case are either not actually plaintiffs, or, should be dismissed for failure to prosecute.

Defendants The City of New York, former DOC Commissioner Martin Horn, Warden Robert Shaw, Warden Andrews, Eric Berliner, Patricia Gordon and Nina Edwards (collectively "defendants"[2]) respectfully submit this memorandum of law in support of their motion, pursuant to Federal Rule of Civil Procedure 12(c), on the following grounds: (1) plaintiffs failed to exhaust their administrative remedies; (2) the complaint fails to state a cognizable federal claim against any of the defendants; (3) the complaint fails to allege facts sufficient to establish any personal involvement for any named defendant; (4) the complaint does not allege facts sufficient to establish municipal liability; (5) the individually named defendants are qualifiedly immune.

**THE ALLEGATIONS IN THE COMPLAINT3**

Of the approximately twenty purported plaintiffs in this case, only plaintiffs Granville Mason and Malik Edwards filed (vague) factual allegations—without any allegation of actual injury (aside from plaintiff Mason's allegations of physical injury due to multiple falls)—beyond those set forth in Complaint. See Exs. B and C (Dkt. Nos. 64 and 87).

---

[2] The docket sheet reflects that named defendants "Warden Fidel Gonzalez" and "Deputy Warden FNU O'Conno" were never served and did not file an answer in this action. Dkt. Nos. 22-28, 33-36.

[3] Although there has been no formal consolidation of the separate actions captioned under the Morales Civ. No., defendants proceed with this single motion pursuant to the Court's March 29, 2013 Order.

Plaintiffs make vague and general allegations of institutional failures that are not specific in any way whatsoever.  Nor do they allege any personal infringement of rights due to the conduct of any City employee, or, actual injury to any purported plaintiff personally.

The Complaint alleges:

> No supply, no trapis beds for inmates how(sic) are paralysis also confliction with the space of the blind inmate, also too many rats in dorm 3 also hoes(sic) in the floors also not enough tolits(sic) for 40 inmates also mosquito(sic) infested also us paralysis inmates couldn't use the rest room because on 6-2-10 until 6-3-10 NIC didn't have any catheterization tray for us paralysis inmates…

Ex. A (Dkt. No. 1) at p. 3.  In the November 1, 2010 submission seeking leave to amend the complaint, plaintiffs alleged further:

> We still don't have a IM (inmate mobility) worker to help us paralyzed inmates, we still don't have supplies for paralyzed inmate, still no doctor on weekends, still no trappize beds 8 out of 30 inmate still yet to do anything to help us paralyzed inmate in dorm 3…supplies are as follow: urinary drainage bags, texas straight catheter zucker pads…confliction means crushing in the blind inmates trying to use the bathroom or going to the dayrooms also only 4 toilets for 40 inmates and one or two is always out of order…

Ex. A (Dkt. 29) at pp. 2-4.

On October 21, 2011, plaintiff Edwards filed the undated "Request to Proceed In Forma Pauperis" which alleged that

> On 10-14-10 in C-74 Rikers I had a slip and fall incident in the shower…I feel out of bed several times causing gashes to my arms and legs…I constantly requests an IMA (inmate mobility assistant) all to no avail…a few times due to non handicap accessible toilets I fell really hard trying to use the bathroom and had to be rushed to the facility infirmary for medical assistance as well I fell  trying to take a shower and due to no (IMA) the blind detainees bumped into my chair causing me to fall over hard.  And due to the floor being uneven on both sides of the dorm I fell causing me to bleed….I was denied by (NIC) medical outside medical assistance.

Ex. C (Dkt. No. 64) at p. 2.

By untitled filing dated April 16, 2012, plaintiff Mason alleged that

> Prior to my arrest I was scheduled for a necessary hip replacement…Surgery was not scheduled for (9) months…My housing area at the time had no beds with a trapeze nor showers or commodes with handrails. The facility also failed to provide properly trained mobility aides to assist me.

Ex. B (Dkt. No. 87) at pp. 1-2. Plaintiff Mason failed to update the Court with a forwarding address. Dkt. No. 102.

On June 22, 2010, plaintiffs Dwayne Tanner, Luis Padilla, Richard Classon, Rivera Cruz Felipe, Henry Vera, Louis Healey, Alfonso Guerrero, Lawrence Watson and Robert Proctor all filed applications to proceed IFP, Dkt. Nos. 3-11 (granted by the Court, Dkt. No. 14), but those plaintiffs failed to file statements of fact supporting a claim related to the Morales claims. Ex. A (Dkt. No. 1) at pp. 8-16. These nine plaintiffs also failed to specify what DOC employees (either by name or by description) committed what acts, on or about on what dates, allegedly causing them injury. Id.; Dkt. Nos. 3-11; Dkt. *passim*. Additionally, plaintiffs Guerrero, Tanner, Felipe, Devin Sayers and Healy failed to update the Court with address changes, and the Court has received mail returned as undeliverable. Dkt. Nos. post-43–pre-46, 16, 103, 105, 108, 109, 113.

On December 2, 2011, the Court denied Devin Sayers' and Alan Pointzes' application to proceed IFP. Dkt. No. 75. Neither Mr. Sayers nor Mr. Pointzes moved for reconsideration or made any further submissions to the Court. Dkt. *Passim*. Both Sayers and Pointzes failed to update the Court with forwarding addresses. Dkt. Nos. pre-46, 103, 107.

On or about October 13, 2011, plaintiff Shannon Gonzales filed an IFP application and a wholly deficient statement of claim with the Court, but defendants were not served with those filings. Dkt. No. 65. On November 8, 2011, defendants opposed plaintiff Gonzales' application to become a plaintiff, noting that "Mr. Gonzales has not provided the

Court with any allegations that assist the Court in understanding how the "nature of the action" in his case relate to the allegations in the Morales complaint."[4] Plaintiff Gonzales failed to file a statement of facts to support any claim of injury. Dkt. *passim*.

By Order dated December 2, 2011, the Court directed Richard Moniquette and Brian Harrison to file statements of claims by January 2, 2012. Dkt. No. 75. Neither Mr. Moniquette nor Mr. Harrison filed a statement of facts to support any claim of injury. Dkt. *Passim*. Additionally, the Court has informed plaintiff Harrison that he not a plaintiff in this action according to the docket sheet. Dkt. No. 100.

On December 21, 2011, Julian A. Batista (aka Alberto Santiago) and Alaa Agina filed IFP applications, but neither submitted prisoner authorizations nor statements of fact. Dkt. Nos. 79-80.[5]

## STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rules 12(b) or 12(c), courts will "accept as true the complaint's factual allegations and draw all inferences in the plaintiff's favor." Cleveland v. Caplaw Enters, 448 F.3d 518, 521 (2d Cir. 2006). "The standard for analyzing a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is identical to the standard for a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Crique v. Magill, 12 CV07 Civ. 10414 (RWS) 2010 U.S. Dist. LEXIS 2897 (S.D.N.Y. Jan. 12, 2010) 3345 (PAC) (GWG), 2013 U.S. Dist. LEXIS 62377 S.D.N.Y. May 1, 2013) citing Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). To survive a motion to dismiss,

---

[4] While the Court stated in its December 2, 2011 Order that defendants had not submitted opposition to the Gonzales application to proceed IFP, defendants had submitted their opposition by letter dated November 8, 2011; counsel provided chambers with copies of the facsimile transmission confirmation of that letter after the Court issued the Dec. 2nd Order. Defendants' Nov. 8th letter was thereafter docketed by the Court on May 14, 2012.

[5] By letter dated Dec. 28, 2012, defendants submitted their analysis, at the Court's request, with respect to the status of each purported plaintiff in this case.

the complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The pleading standards require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," or "labels and conclusions," and instead, must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Where a motion to dismiss is made against a *pro se* plaintiff, the plaintiff's submissions should be "construed liberally and interpreted to raise the strongest arguments that they suggest."  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). However, courts must nonetheless "examine such complaints for factual allegations sufficient to meet the plausibility requirement."  Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011).  The presumption of truth accorded by courts to factual allegations does not extend to legal conclusions.  See Iqbal, 556 U.S. at 678.  Recitations of "the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.

The Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint.  Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); see also DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010).

## ARGUMENT

## POINT I

## PLAITNIFFS FAILED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act ("PLRA") requires inmate-plaintiffs to exhaust their administrative remedies before bringing an action under 42 U.S.C. § 1983.  42 U.S.C. § 1997(e)(a).  This exhaustion requirement "applies to all inmate suits about prison life."  Porter v. Nussle, 534 U.S. 516, 523 (2002).   The facility's grievance requirements determine the boundaries of whether an inmate has fully and properly exhausted available administrative remedies.  Jones v. Bock, 549 U.S. 199, 218 (2007); see also Mamon v. N.Y.C. Dep't of Corr., 10 CV 8055, 2012 U.S. Dist. LEXIS 16519, at *10-11 (S.D.N.Y. Jan. 26, 2012) (dismissing on exhaustion grounds because plaintiffs failed to follow New York City Department of Correction ("DOC") Inmate Grievance Resolution Program ("IGRP") prior to filing complaints).

While an inmate is not required to allege exhaustion of administrative remedies in the complaint, dismissal under Rule 12(c) is appropriate where it is evident from the face of the complaint that a plaintiff did not exhaust such remedies.  Jones, 549 U.S. at 214-15; see also, e.g., Mamon, 2012 U.S. Dist. LEXIS 16519, at *12-15 (dismissing for failure to exhaust where inmate-plaintiffs alleged they filed initial grievances at DOC facility, but did not allege facts showing exhaustion of each step required by the IGRP).

It is well settled that an inmate must complete all steps of the IGRP to fully exhaust his administrative remedies, even if he does not receive a response at a particular step in the proceedings.  See Jones v. Meckley, 07 CV 10414 (RWS) 2010 U.S. Dist. LEXIS 2897 *3-4 (S.D.N.Y. Jan. 12, 2010) (holding that an inmate's remedies are not deemed exhausted until he proceeds through all four levels of DOC's grievance procedure *even when he does not receive a*

*response to his initial grievance)*; see also Salvatierra v. Connolly, 9 CV 3722, 2010 U.S. Dist. LEXIS 137731, at *25-26 (S.D.N.Y. Sept. 1, 2010); Chisholm v. N.Y.C. Dep't of Corr., 8 CV 8795, 2009 U.S. Dist. LEXIS 59446, at *5-6 (S.D.N.Y. July 13, 2009); James v. Hernandez, 8 CV 4293, 2009 U.S. Dist. LEXIS 58735, at *6-9 (S.D.N.Y. July 9, 2009). "If, as a result of a negligent error by prison officials – or even their deliberate attempt to sabotage a prisoner's grievance – the prisoner [does not receive a response] on his complaint, he is not thereby forestalled from appealing." Mendoza v. Goord, 00 CV 0146, 2002 U.S. Dist. LEXIS 22573 at *6 (S.D.N.Y. Nov. 21, 2002).

To determine whether dismissal of an inmate's action for failure to exhaust administrative remedies is warranted, courts consider three factors: (1) whether administrative remedies are available to the inmate; (2) whether the defendants are estopped from asserting an exhaustion defense; and (3) whether special circumstances exist that would excuse the inmate from exhausting. See Hemphill v. New York, 380 F.3d 680, 686-91 (2d Cir. 2004).[6] As discussed below, administrative remedies were available at GRVC, there are no special circumstances sufficiently alleged that excuse plaintiff from the exhaustion requirement, and defendants are not estopped from asserting an exhaustion defense.[7] Administrative remedies are available as a matter of law even where a plaintiff alleges that he did not receive manuals and

---

[6] The Second Circuit has not ruled on whether Hemphill's three-stage inquiry remains viable in light of the stringent interpretation of the PLRA's exhaustion requirement in Woodford v. Ngo, 548 U.S. 81 (2006). See Amador v. Andrews, 655 F.3d 89, 102 (2d Cir. 2011). In any event, in the instant action there are no facts alleged that could serve as a basis for excusing plaintiffs' failure to exhaust even under the Hemphill framework.

[7] Pursuant to Fed. R. Evid. 201(b) & (d), the Court may take judicial notice of DOC's IGRP, which is publicly available at http://www.nyc.gov/html/doc/downloads/pdf/3375R-A.pdf. See Johnson v. Agros, 10 CV 8312, 2012 U.S. Dist. LEXIS 117248 at *10 (S.D.N.Y. Aug. 20, 2012) ("The Court takes Judicial notice of the IGRP, as courts in this Circuit regularly do."); Robinson v. N.Y.C. Dep't of Corr., 06 CV 945, 2007 U.S. Dist. LEXIS 96851, at *6 & n.2 (S.D.N.Y. Mar. 7, 2007) (same, collecting cases).

policy documents explaining grievance procedure. Martin v. City of N.Y., 11 CV 600, 2012 U.S. Dist. LEXIS 56632, *13-20 (S.D.N.Y. Apr. 19, 2012).

Here, plaintiffs' failure to fully exhaust their administrative remedies is clear from the face of the complaint. Plaintiffs vaguely allege that they submitted initial grievances, but that they did not receive a response to those grievances. Ex. A (Dkt. No. 1) at p.4. Plaintiffs concede that they did not pursue grievance appeals when they allege that "there was no response to any grievance that was filled out until this date." Id. at p.5. This statement makes clear that between the time plaintiffs filed these alleged grievances and the time they filed the complaint on June 9, 2010, plaintiffs did not pursue any grievance appeals.

Next, plaintiffs do not allege that they grieved everything that they complain about in this action, nor do they allege any facts which could, broadly construed, indicate that they exhausted the appeals process (which must be pursued even if there is no response to an initial grievance, see *supra* pp. 7-8). Indeed, plaintiffs concede that they only began the grievance process—and did not finish it—with respect to the allegations of [1] "no supply," [2] "no trapis beds," [3] "the floors," [4] "the rats in dorm 3," and [5] the "confliction with the space of the blind inmates." Ex. A (Dkt. No. 1) at p. 4. Specifically, plaintiffs failed to file initial grievances regarding the remaining allegations:

> not enough tolits(sic) for 40 inmates also mosquito(sic) infested also us paralysis inmates couldn't use the rest room because on 6-2-10 until 6-3-10 NIC didn't have any catheterization tray for us paralysis inmates…

Id. at p. 3.

> still don't have a IM (inmate mobility) worker to help us paralyzed inmates, …still no doctor on weekends, …still yet to do anything to help us paralyzed inmate in dorm 3…s…only 4 toilets for 40 inmates and one or two is always out of order…

Ex. A (Dkt. 29) at pp. 2-4.

> slip and fall incident in the shower…I feel out of bed several times causing gashes to my arms and legs…I constantly requests an IMA (inmate mobility assistant) all to no avail…a few times due to non handicap accessible toilets I fell really hard trying to use the bathroom and had to be rushed to the facility infirmary for medical assistance as well I fell trying to take a shower and due to no (IMA) the blind detainees bumped into my chair causing me to fall over hard.  And due to the floor being uneven on both sides of the dorm I fell causing me to bleed….I was denied by (NIC) medical outside medical assistance.

Ex. C (Dkt. No. 64) at p. 2.

> Prior to my arrest I was scheduled for a necessary hip replacement…Surgery was not scheduled for (9) months…My housing area at the time had no beds with a trapeze nor showers or commodes with handrails.  The facility also failed to provide properly trained mobility aides to assist me.

Ex. B (Dkt. No. 87) at pp. 1-2. Because none of the above quoted allegations (which lack allegations of actual injury) were not alleged to have been grieved, they cannot be pursued in this action.

As the cases cited *supra* establish as a matter of law, DOC's grievance procedure explicitly directs inmates who do not receive a response to their grievance to request a hearing before the IGRC.  Requesting such a hearing is required in order to exhaust.  See Meckley, 2010 U.S. Dist. LEXIS 2897, at *3-4.  Because plaintiffs allege that they filed grievances, but thereafter fail to allege that they pursued the full appeals process of any denials or failures to respond by DOC, their claims should be dismissed for failure to exhaust administrative remedies. Mamon, 2012 U.S. Dist. LEXIS 16519, at *12-15 (dismissed for failure to exhaust where inmate-plaintiffs alleged they filed initial grievances at DOC facility, but did not allege facts showing exhaustion of each step required by the IGRP).

## POINT II

## THE COMPLAINT FAILS TO STATE A COGNIZABLE FEDERAL CLAIM

Under Iqbal's pleading requirement—which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," or "labels and conclusions," and instead, must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"—all possible federal causes of action alleged by plaintiffs fail as a matter of law. Iqbal, 556 U.S. at 678.

### A. Plaintiff does not have standing to bring claims on behalf of other individuals.

The standing requirement "enforces the Constitution's case-or-controversy requirement." Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004). Here, plaintiff has raised several claims for which he lacks standing to bring on behalf of himself or on behalf of other purported plaintiffs. As the Supreme Court has held that:

> "the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992) (footnote, citations, and internal quotation marks omitted) . . . In light of these principles, we have repeatedly refused to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing to invoke the federal judicial power.

United States v. Hayes, 515 U.S. 737, 742 (1995) (citations omitted); see also Lewis v. Casey, 518 U.S. 343, 349 (1996). In light of these requirements, plaintiff cannot bring claims on behalf

of other individuals when he has suffered no injury in fact as a result of allegedly illegal conduct. While the Supreme Court has recognized several instances in which claims may be brought on behalf of others, a plaintiff still must demonstrate an injury in fact, as well as two other criteria: his close relationship with the third party and an inability of the third party to protect his own interests.  Singleton v. Wulff, 428 U.S. 106, 113-14 (1976).  Plaintiff has alleged none of these elements.  Thus, as plaintiff has no standing to bring claims on behalf of any purported plaintiff (to the extent he seeks to do so), those claims should be dismissed.

**B.      Plaintiff does not allege an injury in fact.**

Plaintiffs fail to allege an injury in fact that is "concrete and particularized," "actual or imminent" and the result of an identified action.  See Lujan, 504 U.S. at 560-61.  For example, plaintiffs allege "too many rats in dorm 3 also hoes(sic) in the floors also not enough tolits(sic) for 40 inmates also mosquito(sic) infested also us paralysis inmates couldn't use the rest room because on 6-2-10 until 6-3-10 NIC didn't have any catheterization tray for us paralysis inmates…"  Ex. A (Dck. 1) at p. 3.  Plaintiffs further allege that "We still don't have a IM (inmate mobility) worker to help us paralyzed inmates, we still don't have supplies for paralyzed inmate, still no doctor on weekends, still no trappize beds 8 out of 30 inmate still yet to do anything to help us paralyzed inmate in dorm 3…supplies are as follow: urinary drainage bags, texas straight catheter zucker pads…confliction means crushing in the blind inmates trying to use the bathroom or going to the dayrooms.  Ex. A (Dkt. 29) at pp. 2-4.  As all of plaintiffs' claims amount to little more than "generalized grievance[s] against allegedly illegal governmental conduct," they are insufficient to invoke federal judicial power.  Hayes, 515 U.S. at 743.

**C.       The Complaint Fails to Allege Claims Under the ADA or Rehabilitation Act**

To the extent plaintiffs cite to the Americans with Disabilities Act ("ADA") in the complaint, Ex. A (Dkt. No. 1) at p.3, any such claim is also insufficiently pled and should be dismissed.  The ADA and the Rehabilitation Act "impose identical requirements," and courts therefore analyze claims under both statutes in tandem.  Rodriguez v. City of New York, 197 F.3d 611, 618 (2d Cir. 1999).  To state a claim, "a prisoner must show: (1) 'he is a qualified individual with a disability'; (2) 'he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity'; and (3) 'such exclusion or discrimination was due to his disability.'"  Edwards v. Horn, 10 CV 6194 (RJS) (JLC), 2012 U.S. Dist. LEXIS 30968, at **71-72 (S.D.N.Y. Mar. 8, 2012) (quoting Phelan v. Thomas, 439 Fed. Appx. 48, 50 (2d Cir. 2011)).  A plaintiff's ADA claim must "allege that his or her mistreatment 'was motivated by either discriminatory animus or ill will due to disability.'"  Elbert v. New York State Dep't of Corr. Servs., 751 F. Supp. 2d 590, 594-5 (S.D.N.Y. 2010) (citing Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 112 (2d Cir. 2001)).

Here, the complaint does not allege that plaintiffs were excluded from or denied the benefits of any services, programs, or activities *on account of* their respective disabilities.  Exs. A-C *passim*.  No purported plaintiff alleges facts that they were deprived access to any program or service *on account of* their disabilities.  Exs. A-C *passim*; Dkt. *passim*.

Next, even assuming, *arguendo*, that plaintiff Mason received inadequate medical treatment, he has not asserted a single non-conclusory fact to indicate that he received such treatment *because of* his disability.  "Courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability."  Elbert, 751 F. Supp. 2d at 595-96 (citing cases).  Here, plaintiff

Mason's allegations merely amount to a claim that he was not properly treated *for* his disability, not *because* of his disability.

**D. The Complaint Fails to State a Claim Under 42 U.S.C. § 1983**

Next, to the extent any of the purported plaintiffs assert claims under 42 U.S.C. § 1983 regarding inadequate medical care, they may only do so by alleging that defendants' actions were taken with deliberate indifference to the plaintiffs' constitutional rights.

**1. Deliberate Indifference to Medical Need**

Claims for deliberate indifference to a serious medical condition, or other serious threat to the health or safety of a person in custody, are analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment. Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009). "Not every lapse in medical care is a constitutional wrong," Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006), and "so long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998). Significantly, a claim of deliberate indifference "is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law." Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003); see also Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) ("'Deliberate indifference' describes a mental state more blameworthy than negligence.").

The standard of deliberate indifference includes both objective and subjective components. See Chance, 143 F.3d at 702. Plaintiff must show that 1) the alleged threat was, in objective terms, sufficiently serious, and 2) defendant acted with a "sufficiently culpable state of mind." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). The standard for objective seriousness contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain." Id. (quoting Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J.,

dissenting)). A plaintiff need not "demonstrate that he or she experiences pain that is at the limit of human ability to bear, nor…show[] that his or her condition will degenerate into a life-threatening one." Brock v. Wright, 315 F.3d 158, 163 (2d Cir. 2003).

Here, it is clear from the face of the Complaint that defendants were not deliberately indifferent to plaintiff's medical needs. First, plaintiffs make no allegation of lack of medical care with respect to the conditions of confinement allegations in this case. Ex. A (Dkt. Nos. 1 and 29) *passim*. Next, plaintiff Mason's conclusory allegation of delayed hip replacement surgery do not allege any wrong doing by and DOC employee, at any time. Ex. B (Dkt. No. 87). Instead, Mason merely alleges in conclusory fashion that his surgery was delayed. Id. There is no basis from which a finder of fact could conclude—based on Mason's allegations, that any City employee was deliberately indifferent to his medical needs.

**2. Conditions of Confinement**

Next, to the extent that the Complaint alleges infringement of federally protected rights due to unconstitutional conditions of confinement, it is similarly fatally vague as to all plaintiffs.

The Eighth Amendment prohibits punishments that are incompatible with "the evolving standards of decency" or those that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 102 (1976) (internal citations omitted). "Unnecessary and wanton infliction of pain" can arise from an inhumane prison condition. Rhodes v. Chapman, 452 U.S. 337, 347 (1981). When a claim arises out of conditions of confinement, a prisoner claiming a constitutional violation must allege both (1) that he suffered an objectively serious harm and (2) that officials who caused the violation acted or failed to act with a sufficiently culpable state of mind, *i.e.*, with "deliberate indifference to inmate health or safety." Wilson v. Seiter, 501 U.S. 294, 298 (1991). The fact that conditions of confinement may not comport with

local or state correctional facility standards alone does not establish a constitutional violation; the elements of a deliberate indifference claim must be met. See Gamble v. City of New York ex rel. NYC Dept. of Correction, 04 CV 10203 (GL), 2009 U.S. Dist. LEXIS 88562, at *12 (S.D.N.Y. Sept. 25, 2009).

Here, the Complaint fails to make any allegations of "serious harm" due to any of the various offending alleged conditions, e.g., the presence of rats or mosquitoes. With respect to the sole allegation in the case of serious harm due to a challenged condition, i.e., harm to plaintiff Mason when he allegedly feel due to an uneven floor, plaintiff Mason fails to allege facts that would, if proved, satisfy the second prong of the Wilson test: there are no factual allegations that any individual defendant acted with a culpable state of mind. Ex. A (Dkt. No. 1) *passim*.

Accordingly, the bald allegations set forth in the Complaint do not state a claim under the ADA, the Rehabilitation Act or Section 1983, and should therefore be dismissed.

## POINT III

### THE COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO ESTABLISH ANY PERSONAL INVOLVEMENT OF ANY NAMED DEFENDANT

The personal involvement of the individually-named defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). To adequately allege personal involvement, a plaintiff must allege that the defendant, through her own specific conduct, violated the Constitution. Iqbal, 556 U.S. at 676. "Iqbal's 'active conduct' standard only imposes liability on a supervisor through section 1983 if that supervisor actively had a hand in the alleged constitutional violation." Bellamy v. Mount Vernon Hosp., 07 CV 1801 (SAS), 2009 U.S. Dist. LEXIS 54141,

at *27 (S.D.N.Y. June 26, 2009), aff'd Bellamy, 387 Fed. Appx. 55, 56-57; 2010 U.S. App. LEXIS 14981, *3 (2d Cir., 2010).  Alleging gross negligence in the supervision of subordinates is not enough.  Bellamy, 2009 U.S. Dist. LEXIS 54141, at *28 (finding that category "4" set out in Colon v. Coughlin, 58 F. 3d 865, 873 (2d Cir. 1995) "impose[s] the exact types of supervisory liability that Iqbal eliminated—situations where the supervisor knew of and acquiesced to a constitutional violation committed by a subordinate.")  See also  Maldonado v. Kinlock, et al., 09 CV 8435, 2012 U.S. Dist. LEXIS 118200, *7 (S.D.N.Y. Aug. 21, 2012) (citing Joseph v. Fischer, 08 CV 2824, 2009 U.S. Dist. LEXIS 96952 (S.D.N.Y. Oct. 8, 2009)):

> As "vicarious liability is inapplicable to . . . *§ 1983* suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 676. Each official is "only liable for his or her own misconduct." *Id.* at 677. In the context of supervisory defendants, "[a] defendant is not liable under *section 1983* if the defendant's failure to act deprived the plaintiff of his or her constitutional right." See, e.g., *Joseph v. Fischer*, 08 Civ. 2824, 2009 U.S. Dist. LEXIS 96952, 2009 WL 3321011, at *14 (S.D.N.Y. Oct. 8, 2009).

Id. at *7; De la Rosa v. New York City, 33 Precinct, 07 CV 7577 (PKC) (KNF), 2010 U.S. Dist. LEXIS 43197, 2010 WL 1737108 at *4 (S.D.N.Y. Apr. 27, 2010) (plaintiff must allege supervisor "took an action that deprived the plaintiff of his or her constitutional rights.").  During 2012, this Court has repeatedly found—citing Bellamy and Joseph—that to establish supervisory liability an inmate-plaintiff must allege a supervisory defendant's "own individual actions" caused the violation.  Maldonado, 2012 U.S. Dist. LEXIS 118200, at *8; Lozado v. Warden Downstate Correctional Facility, 10 CV 8425 (RWS), 2012 U.S. Dist. LEXIS 88515, at *7 (S.D.N.Y., June 22, 2012); Byng v. Wright, 09 CV 9924 (PKC) (JCF), 2012 U.S. Dist. LEXIS 39618, at *37 (S.D.N.Y., Mar. 19, 2012,); Adams v. Ellis, 09 CV 1329 (PKC), 2012 U.S. Dist. LEXIS 29621, at ** 19-20 (S.D.N.Y., Mar. 2, 2012) ("under *Iqbal*, a defendant can be liable under section 1983 only if that defendant took an action that deprived the plaintiff of his or her

constitutional rights, either through direct participation or by creating a custom or policy….")[8] See also Fludd v. Fischer, 10 CV 6603 (CJS), 2012 U.S. Dist. LEXIS 122924, **15-16 (W.D.N.Y., Aug, 28, 2012) (granting Rule 12(b) motion, citing Bellamy); Bryant v. County of Monroe, 09 CV 6415 (CJS), 2010 U.S. Dist. LEXIS 126426, **10-11 (N.D.N.Y., Nov. 22, 2010) ("The Court…is persuaded by the analysis of *Ashcroft v. Iqbal* by the Southern District of New York in Bellamy"). In Gilliam v. Hamula, 06 CV 6351 (CJS)(MWP), 2011 U.S. Dist. LEXIS 142431, **37-38 (W.D.N.Y., Dec. 12, 2011), the Court dismissed a supervisory liability claim emphasizing that Bellamy "was affirmed by the Second Circuit in an unpublished decision." As the Court in Iqbal directed:

> [A section 1983] plaintiff must plead that each Government-official defendant, through the official's *own individual actions*, has violated the Constitution….[R]espondent believes a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution. We reject this argument.

[8] This Court has recently and repeatedly cited Bellamy and Joseph approvingly. Flynn v. Lee, 11 CV 5311 (LAP), 2012 U.S. Dist. LEXIS 108626, at *4, 8-9 (S.D.N.Y., Aug. 1, 2012); McKethan v. N.Y. State Dep't of Corr. Servs., 10 CV 3826 (NRB), 2011 U.S. Dist. LEXIS 105771, at *16-17 (S.D.N.Y., Sept. 16, 2011); Estate of Young v. State of N.Y., 649 F. Supp. 2d 282, 289 (S.D.N.Y. 2009); but see Delgado v. Bezio, 09 CV 6899 (LTS), 2011 U.S. Dist. LEXIS 51917, *23-26 (S.D.N.Y., May 9, 2011)(citing Sash and applying Colon factor "2" because "intent is not an element of his due process claims."), Sash v. U.S., 08 CV 8332 (AJP), 674 F. Supp. 2d 531; 2009 U.S. Dist. LEXIS 116580 (S.D.N.Y., Dec. 15, 2009) (Bellamy and similar cases "may overstate *Iqbal's* impact on supervisory liability. *Iqbal* involved alleged intentional discrimination"). Notably, while some opinions from this Court cite a disagreement within this District regarding whether the five Colon factors continue to apply, defendants could not find a single case, post Iqbal, where supervisory liability was eventually found to have been established based solely on a supervisor being informed through a "report or appeal" of an alleged constitutional violation and thereafter failing to act. Indeed, five years before *Iqbal* was decided, this Court cautioned that "the second example listed in *Colon* -- permitting supervisory liability where a "defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong," -- should not be too broadly construed." Johnson v. Wright, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002). "Precisely what remains of the Second Circuit rule [set out in Colon] in light of Iqbal is not entirely clear." Young v. State of N.Y. Office of Mental Retardation and Developmental Disabilities, 649 F.Supp.2d 282, 293-94 (S.D.N.Y. 2009).

Iqbal, 556 U.S. at 676-77, 693 (emphasis added) ("Lest there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating *Bivens* supervisory liability entirely." (Souter, J. dissenting)).

In view of the Circuit's affirmance in Bellamy (a fact not analyzed or discussed in Sash), and in light of Iqbal's unambiguous language requiring active conduct for supervisory liability under section 1983, this Court should continue to apply Iqbal's "active conduct" standard.

In any event, even under a pre-Iqbal / Colon analysis, "it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation is insufficient to hold that official liable for the alleged violation."  Spavone v. Fischer, 10 CV 9427 (RJH)(THK), 2012 U.S. Dist. LEXIS 13550, *16 (S.D.N.Y. Jan. 31, 2012) (citing Greenwaldt v. Coughlin, 93 CV 6551, 1995 U.S. Dist. LEXIS 5144, 1995 WL 232736, at *4 (S.D.N.Y. Apr. 19, 1995)).   "In claims against prison officials, personal involvement is not satisfied when a defendant merely has knowledge of a violation…" Lewis v. Cunningham, 05 CV 9243 (GBD)(RLE), 2011 U.S. Dist. LEXIS 40181  (S.D.N.Y. Mar. 14, 2011) (citing Word v. Croce, 230 F. Supp. 2d 504, 514 (S.D.N.Y. 2002) ("Plaintiff has alleged no facts showing direct involvement.…At most, Plaintiff makes conclusory allegations that Defendants Croce and Goord had knowledge of the constitutional violations alleged in her complaint…Plaintiff does not allege that either Defendant helped create NYDOCS's policies…that Plaintiff contends violate her constitutional rights.")).

Here, plaintiffs' threadbare and wholly conclusory allegations fail to establish personal involvement on the part of any individual defendant.  Exs A-C *passim*.  Plaintiffs merely include the names of the individual defendants in the caption.  Ex. A (Dkt. No. 1) *passim*.

Nowhere in any paper filed by any purported plaintiff in this case is there a single action alleged to have been take by any named defendant. Exs. A-C *passim*; docket sheet *passim*. All claims against all individually named defendants should be dismissed.

## POINT IV

## THE COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO ESTABLISH MUNICIPAL LIABILITY

To the extent the Complaint is construed to state a Monell claim—and it should not be—plaintiffs fail to allege facts sufficient to establish municipal liability because they fail to allege that a municipal policy or an institution-wide custom was the moving force behind the alleged constitutional violation.

Section 1983 liability can only be imposed on a City if a municipal "policy or custom" was the "moving force" behind the injury. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Under Federal law, a "policy" can mean either: (1) "an actually promulgated policy" such as an ordinance or regulation, or (2) "an act . . . by a municipal employee" who, as a matter of State law, has "final policymaking authority in the area" in question. E.g., Berry v. Millbrook, 815 F. Supp. 2d 711, 717 (S.D.N.Y. 2011). "A municipal 'custom,' on the other hand . . . [refers to a] practice [that] is so widespread as to have the force of law." E.g., id.

Because "claim[s] against an individual municipal employee in his official capacity" are "tantamount to claims against the municipality itself," *Monell*'s standard of liability applies equally to all defendants to the extent that plaintiffs assert claims against them in their official capacities. See Jessamy v. City of New Rochelle, 292 F. Supp. 2d 498, 509 (S.D.N.Y. 2003). Vague, speculative, or conclusory allegations about the existence of a policy or custom do not suffice to state a § 1983 claim against a municipal defendant. See, e.g., Perez v. County of Westchester, 83 F. Supp. 2d 435, 438-39 (S.D.N.Y. 2000), *aff'd*, 242 F.3d 367 (2d

Cir. 2000). In addition, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998) (citation omitted).

Here, the allegations in the Complaint do not even recite the elements of a Monell cause of action. Exs. A-D. Even if the Complaint were to state a claim for a violation of plaintiffs' constitutional rights (which it does not), the allegations of impermissible conditions of confinement and of inadequate medical care are nothing more than single instances involving actors below the policy-making level, which is insufficient to sustain a claim against a municipality. For example, the Complaint states that bathroom access was restricted for one calendar day, which cannot serve as a basis for finding that Monell liability has been alleged. Ex. A (Dkt. No. 1) at pp.2-3, Therefore any claims against the individual defendants in their officially capacities should be dismissed.

## POINT V

## THE INDIVIDUALLY NAMED DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

The doctrine of qualified immunity shields public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Salahuddin v. Goord, 467 F.3d 263, 273 (2d Cir. N.Y. 2006) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818). The Second Circuit has recognized that ruling on the qualified-immunity defense requires a two-step inquiry. First, a court should consider "whether the plaintiff's factual allegations, both those unchallenged and those as to which the record creates a genuine dispute, show the official's conduct violated a constitutional or statutory right." Salahuddin, 467 F.3d 263 at 273 (quoting Saucier v. Katz, 533 U.S. 194,201 (2001). If the assumed facts do not establish a violation, the defendant must be

granted summary judgment. Id. "On the other hand, if violation of a right can be shown, the next, sequential step is to ask whether the right was clearly established, and, if it was, whether the evidence is such that, even when it is viewed in the light most favorable to the plaintiff and with all permissible inferences drawn in his favor, no rational jury could fail to conclude that it was objectively reasonable for the defendant to believe that [he or she] was acting in a fashion that did not violate a clearly established right." Id. (internal citation omitted); In re State Police Litig., 88 F.3d 111, 123 (2d Cir. 1996).

For all the reasons discussed *supra*, plaintiffs' bald allegations cannot, if proved, establish that the conduct of the individually named defendants violated a constitutional or statutory right, or, was objectively unreasonable. Iqbal, 556 U.S. at 678. Indeed, plaintiffs do not allege any conduct whatsoever by any named defendant. Therefore, all defendants are qualifiedly immune from suit.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that their motion to dismiss the Complaint be granted in its entirety, that the Complaint be dismissed with prejudice, and that defendants be awarded such other and further relief as the Court deems just and proper.

Dated: May 8, 2013
New York, New York

MICHAEL A. CARDOZO
Corporation Counsel of the
City of New York
*Attorney for Defendants*
100 Church Street, Room 2-194
New York, New York 10007
(212) 788-0874

By: /s/
Martin Bowe
Assistant Corporation Counsel